# CHARLESTON.

SOUTH PENN OIL CO. *et al.* v. EDGELL *et al.*

Decided December 1, 1900.

OIL LEASE—*Forfeiture—Relief in Equity.*

The forfeiture clause in a gas and oil lease, under which a valuable estate vested in the lessee in so far as the rentals are concerned, made payable in gas, oil, and money, is in the nature of a penalty to secure such rentals, against which a court of equity will grant relief when compensation for such rentals can be fully made, and great loss wholly disproportionate to the injury occasioned by the breach of the contract would otherwise result to the lessee negligently, but not fraudulently, in default. (p. 351).

Appeal from Circuit Court, Pleasants County.

Bill by the South Penn Oil Company and others against Mary A. Edgell and others. From a judgment refusing to dissolve an injunction, defendants appeal.

*Affirmed.*

McCLUER & McCLUER, V. B. ARCHER, and WILLIAM BEARD, for appellants.

U. N. ARNETT and A. B. FLEMING, for appellees.

DENT, JUDGE:

Mary A. Edgell and others appeal from a decree of the circuit Court of Pleasants County overruling a motion to dissolve and continuing an injunction against them in favor of the South Penn Oil Company and the Victor Oil and Gas Company.

The appellees held a lease of all the oil and gas under a certain tract of land belonging to the appellants. In addition to a cash consideration of five hundred dollars paid the appellees were to pay three hundred dollars per year in semi-annual payments for the use of the gas from the well already drilled by them, also one-eighth of the oil produced and the following stipulations were made a part of such lease under a compromise agreement, to-wit: "And it is further agreed as a part of the consideration of this agreement and compromise that the said Mary A. Edgell, her heirs or assigns, shall have the right to connect a service line with the gas line of the first parties, near said gas well, and at her own cost and expense lay a service line from said well connecting to the dwelling-house occupied by her on said land, and have the use of the gas from said well for domestic purposes in such dwelling-house free of charge so long as the first parties, or those holding under them, use or utilize the gas from said well. Such connections and service line and all fixtures shall be made, placed and kept in repair at the expense of said Mary A. Edgell at her risk; it being understood by the second parties that the pressure of gas from said gas well is uneven and variable, and that the use thereof is dangerous, and that the first parties are not to be liable in anywise and on any account to the second parties, or to the said Mary A. Edgell, or those holding under her, for any injury she or they may receive or any damage which she or they may sustain by reason of her so connecting her said service line with the gas line or said well, the said parties, or Mary A. Edgell, taking all risks; and if from any cause the gas from the said gas well be not used or utilized, then said second parties are to have gas for domestic use free of cost as aforesaid, until said well is abandoned, and should said well be abandoned and there be other well or other wells hereafter drilled by said first parties or their assigns, then said second parties are to have gas from said well or wells as aforesaid; and if the said first parties fail or refuse to pay, keep and perform any of covenants or obligations that they have

agreed to or undertaken in the original lease or in the compromise, then and in that event the lease and this compromise contract is at an end as fully and completely as if the lease and compromise had never been made and entered into." The officers and agents of the appellees having lost sight of this part of their lease which was contained in a compromise agreement, sought to compel Mrs. Edgell to sign a new contract of release of risk of damage, and to pay for the gas used by her. She refusing to do so, they disconnected her service pipe so as to deprive her of the use of the gas partly as they claim because she was wasting and misusing the gas, but principally as the evidence shows because they were not aware of the foregoing stipulation as belonging to their lease. This was a matter of plain negligence on the part of some of the officers or counsellors of the apellees for they had possession of a copy of the contract, and by proper diligence could have been fully informed of its contents. She made application to be allowed to re-connect the pipe and use the gas. This appellees refused. Thereupon Mrs. Edgell as a matter of retaliation declared a forfeiture of the whole contract and seized possession of the property, including the gas and oil well and all the appellees machinery and fixtures in connection therewith. Appellees then filed their bill for an enforcement of their lease and for relief from the forfeiture thereof, if the same were legal. Under the prayer for general relief in a case of this character relief from forfeiture could be granted. There is no question that equity has jurisdiction of the matters in controversy, as alleged in the bill. 22 Am. & En. En. Law, 972; *Bettman* v. *Harness*, 42 W. Va. 433; *Eclipse Oil Co.* v. *South Penn Oil Co.*, 34 S. E. 923. "A court of equity will often relieve a tenant from an attempted inequitable forfeiture unless the tenant's breach was wilful and particularly when the breach or default was a result of accident or mistake." 12 Am. & En. En. Law, 758q. The breach in this case came from a negligent mistake, but it was not wilful in a legal sense. To be so it must be knowingly committed. The appellees having discovered the gas and oil under appellant's property had a vested estate therein. Out of this estate and as a part consideration therefor they had granted to Mrs. Edgell gas for domestic use. While they fully complied with all the other conditions of their lease and paid the rentals therefor, this grant they overlooked and temporarily deprived her of the bene-

fits thereof until they found out their mistake. This is not a plain, open, knowing and wilful violation of the contract, but it is merely a denial of part of the consideration thereof through oversight or mistake. "In general the exercise of a restraining power of a court of equity against forfeitures depends upon the peculiar circumstances of the particular case; whether the forfeiture will work a hardship at the time not contemplated when the contract was made or other general grounds of equitable relief." 12 Am. & En. En. Law, 758p. In the case of *Ganer* v. *Hannah,* 6 Duer (N. Y.) 273, Judge Slosson says: "I take the rule to be well settled, that equity will readily, where the breach is not wilful, relieve from forfeiture or penalty as where the stipulation is intended as a mere security for the payment of money and precise compensation can be made." In the case of *Davis* v. *West,* 12 Vesey R. 475, the Chancellor says: "That where covenants are broken and there is no fraud, and the party is capable of giving complete compensation, it is the province of a court of equity to interfere to give the relief against forfeiture for breach of other covenants as well as that for payment of rent.' In Story's Equity Jurisprudence, s. 1314, it is said: "The general principle now adopted is that wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument and the penalty is deemed only as accessory and therefore as intended only to secure the due performance thereof, or the damage really insecured by the non-performance. In every such case the true test (generally if not universally) by which to ascertain whether relief can or cannot be had in equity is to consider whether compensation can be made or not. If it cannot be made then courts of equity will not interfere. If it can be made, then if the penalty is to secure the mere payment of money, courts of equity will relieve the party upon paying the principal and interest. If it is to secure the performance of some collateral act or undertaking, then courts of equity will retain the bill and will direct an issue of *quantum damnificatus* and when the amount of damages is ascertained by a jury upon the trial of such an issue, they will grant relief on payment of such damages." The forfeiture clause was inserted in the compromise lease under discussion so far as the rent is concerned, as a penalty to secure the payment of the rent partly in

money and partly in gas and oil. "In reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act) that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party. If it be said that it is his own folly to have made such a stipulation, it may equally well be said that the folly of one man cannot authorize gross oppression on the other side. * * * Where a penalty or forfeiture is designed merely as a security to enforce the principal obligation, it is as much against conscience to allow any party to pervert it to a different and oppressive purpose as it would be to allow him to substitute another for the principal object. The whole system of equity jurisprudence proceeds upon the ground that a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice or fraud or oppression or harsh or vindictive injury." Story's Equity Jurisprudence, 1316. "Where the condition or forfeiture is merely a security for the non-payment of money (such as a right of re-entry upon or non-payment of rent) there it is to be treated as a mere security and in the nature of a penalty and is accordingly relievable." Story's Equity Jurisprudence, 1321. The gas to be furnished and denied in this case was strictly rent, being a part of the consideration for the compromise lease, the value of which could be easily ascertained in money. All the agents of the appellees acting under a mistake as to Mrs. Edgell's rights asked of her was to sign a contract agreeing to pay two dollars per month for each gas fire in her house during the winter and one dollar and fifty cents per month during the summer. The gas was only shut off for about one week, so that the pecuniary value thereof was very small. The appellants claim on account of the cold weather they suffered large consequential damages. The matter of damages has not yet been considered by the circuit court and is not before this Court. *State* v. *Reyman,* (decided at this term). The question of mistake has little to do with this case except as furnishing an excuse for the conduct of appellees' agents and to show that they thought they were justified therein, and did not act fraudulently or knowingly. Being a matter of negligence on their part it could not furnish a legal excuse for their

conduct. This case is determined on the fact that the gas was a rental consideration easily ascertainable in money, and that so far as it was concerned the forfeiture was in the nature of a penalty to secure the gas right to the appellants against which a court of equity will grant relief on the payment of the damages, to be properly ascertained for the breach of the condition of their contract on the part of the appellees and their agents.

The decree is affirmed.

*Affirmed.*