NORTH AVENUE MARKET, INC., *v.* WILLIAM F. KEYS.

[No. 94, October Term, 1932.]

186

*Decided February 1st, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Raphael Walter,* with whom were *Sykes, Nyburg, Goldman & Walter,* on the brief, for the appellant.

*John Holt Richardson,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order dissolving an injunction, after submission of the question involved on bill and answer.

The bill of complaint alleges that the appellant is the owner of the North Avenue Market, in Baltimore, which consists of two hundred and fifty-eight market stands, occupied by about seventy retail merchants engaged in the sale of various and sundry food products; that on August 30th, 1929, it leased two stands to the appellee for the term of two years beginning September 16th, 1929, the appellee now being a hold-over tenant, to be "used exclusively and only for the sale of Delicatessen and full line of Domestic and Imported Cheese and Sliced Bacon. Westphalia Hams and Smoked Loin Backs at Retail and for no other purpose"; that, "notwithstanding the aforesaid restriction as to use, the said defendant wrongfully, in violation of the rights of" the plaintiff, "has offered for sale and does sell from said stands uncooked smoked hams of a kind and variety which are not Westphalia hams and of a kind and variety that are in violation of the aforesaid restriction"; that, after notice from the plaintiff (lessor) to the defendant of the alleged violation of the terms of his lease, the defendant gave the plaintiff by letter of July 1st, 1932, his assurance that the sale of uncooked hams would be discontinued, but that he had since resumed their sale, against which the plaintiff has no adequate remedy at law, and prayed the writ of injunction, which was granted.

The defendant (appellee) answered that it had not "done anything in violation of the rights of the plaintiff, or has done anything in violation of the terms of the lease"; that he admitted signing the letter of July 1st, but charged that it was signed "under duress, in that on Friday, July 1st, at 5 P. M., he was summoned to the office of the plaintiff, and there shown the letter which had been prepared by the attorney for the plaintiff, and he was then and (there) threatened by the agents of the plaintiff that unless he signed said letter, he would not be permitted to occupy his stand the next morning, Saturday, the day most profitable to the defend-

188

ant"; that he admitted his refusal to abide by the terms of the letter so signed by him, and that he should not be obliged to, as his signature thereto was procured by duress; and further says "the selling of uncooked smoked hams in said space is not a violation of the said lease or the terms thereof," and that he had sold such hams in said space to the plaintiff's knowledge, and "that other tenants of the defendant occupying spaces in said market under lease from defendant for purposes almost identical with those of the lease of the defendant, sell uncooked smoked hams from and in said spaces." The defendant denied the claims of the appellant that the alleged violation of his lease was injurious, and that it had no adequate remedy at law for the redress of its grievances. The appellant excepted to the answer and each and every part thereof, and its exceptions were overruled.

The appellee's contention is that his answer is a full and complete denial of the allegations of the bill, and that, because the hearing was on bill and answer, his denial must be accepted as true in fact, and the allegations of the bill as sworn away. The appellant contends that the appellee's answer is virtually an admission of the facts set up in the bill, and therefore the only question is one of construction of the lease and a definition of the defendant's rights thereunder.

According to *Alexander's Chancery Practice,* 66, after answer, if the plaintiff determines to prosecute, "he may at his election, set down the cause for hearing, at the succeeding term. But on such hearing, he would be held to admit the truth of the whole answer, or, at least, of so much as is susceptible of proof. This course is, therefore, hazardous, except in a clear case." Mr. Miller, in his *Equity Procedure,* 706, summarizing the decisions on the practice in this state, says: "When a motion to dissolve is heard on bill and answer, all the allegations of the bill which are not denied by the answer, are taken to be true. This rule is said to be as well settled as any rule of practice can be. If the facts of the bill be admitted or not denied the injunction will be continued. But if any allegation of the bill be denied by the answer, such allegation cannot be considered. With

respect to the answer, the rule is that when a motion to dissolve is heard on bill and answer, the responsive averments of the answer are taken as true." See also, note to *Salmon v. Clagett*, 3 Bland, 125, Brantley's Ed. 142.

The substantial averment of the bill is that the appellee is selling, in violation of the terms of his lease, "uncooked smoked hams of a kind and variety which are not Westphalia hams." The appellee, in his answer, denies that he has done anything in violation of the terms of his lease, and then admits the selling of "uncooked smoked hams," and justifies his action, not by claiming that "uncooked smoked hams" are "delicatessen," but because, by way of avoidance, "that other tenants of the defendant occupying spaces in said market under lease from the defendant (plaintiff) for purposes almost identical with those of the lease of the defendant, sell uncooked smoked hams from and in said spaces."

With such an admission (*State v. Northern Central Ry. Co.*, 18 Md. 193, 219), the case rests on the sufficiency of the averments of the bill to entitle the plaintiff to an injunction to hold the defendant within the bounds of his lease. The appellee contends that the bill is, in effect, an attempt to compel by injunction the specific performance of a contract, and is therefore subject to the principles applying to the latter remedy. *Smith v. Myers*, 130 Md. 64, 99 A, 938. This is not our view. The plaintiff does not complain that the defendant is not keeping his agreement, but that he is going beyond it, and using its space to sell goods which he is not authorized to sell. In other words, he rents a market space in which he is authorized to sell certain named articles or classes of merchandise, about which there is no controversy, and for the same rent he sells other merchandise for which he has not rented or hired market space. So that the bill is filed, not to compel the defendant to do something which he has agreed to do, but to restrain him from doing something which he is not authorized to do, but which, by implication, if not expressly, he has agreed not to do (*Hahn v. Concordia Society*, 42 Md. 460, 463), and this principle applies to agreements between lessor and lessee to limit the

use of premises to the purposes covered by their contracts (22 *C. J.* 204; 2 *Beach, Modern Eq. Jur.,* secs. 769-771; 1 *High on Injunctions* [4th Ed.], sec. 434).

No case on the subject-matter of this appeal has been more often cited in the text-books than *Maddox v. White,* 4 Md. 72, wherein it was held: "That a lessor may, by injunction, prevent his lessee, or those claiming or holding under him, or acting by his authority, from converting the demised premises to uses inconsistent with the terms of the contract, and from making material alterations for such purposes, as also from committing other kinds of waste." And in *Gale v. McCullough,* 118 Md. 287, 292, 84 A. 469, 471, it was said: "It is not necessary that there should be an express covenant against such change of use. There is an implied obligation on the part of the lessee to that effect of the same force as an express covenant." See *Baugher v. Crane,* 27 Md. 36; 16 *R. C. L.* 736, par. 229.

It is therefore apparent, if the articles of merchandise mentioned in the lease do not include, or exclude, uncooked smoked hams, or if not within the term "delicatessen," that their sale can be enjoined as not authorized by the lease.

The word "delicatessen," while including a variety of foods, is given the primary meaning, by all of the lexicographers, as "prepared foods," and all give "cooked meats" as an illustration. It is a matter of common knowledge that "uncooked smoked hams" are not "cooked meats." In construing contracts, courts give to the language its plain and ordinary meaning, unless it has a local or trade meaning different from that commonly or generally given to it, when it must be proved by the adduction of satisfactory evidence (*Abuc Trading & Sales Corp. v. Jennings,* 151 Md. 392, 415, 135 A. 166), but "many of the highest courts in this country have decided that, when the meaning of words is not ambiguous, proof of usage will not be received in the interpretation of contracts." *Susquehanna Fertilizer Co. v. White,* 66 Md. 444, 455, 7 A. 802, 804.

It is not necessary to resort to any outside aid in the construction of this contract. The lease is of two spaces in the

market, from which only "delicatessen and full line of Domestic and Imported Cheese and Sliced Bacon, Westphalia Hams and Smoked Loin Backs" may be sold "at Retail." The bill avers that "uncooked smoked hams" are not "Westphalia hams," and, as this is not denied, the averment must be taken as true. If sliced bacon and smoked loin backs are not to be treated, under the lease, as delicatessen, on what theory can it be said that uncooked smoked hams are to be so considered? When the contract of leasing was written and signed, it is to be assumed that the parties said what they meant and that they meant what they said. They did not say uncooked smoked hams were to be sold, and because they were not mentioned in the paper we can only assume that their sale was not contemplated or intended.

The appellee asserts that by the agreement itself an adequate remedy at law is provided of which the appellant can avail itself. The remedy referred to is the right of the appellant to cancel the lease, if the lessee shall violate any of the terms of his agreement, and such violations shall continue after twenty-four hours' notice thereof; then the lessor may, at its option, after five days' written notice, cancel and annul the lease. We do not understand this to mean that the lessor cannot resort to its remedy in equity to preserve and maintain the integrity of its agreement. It is manifestly a case wherein the lessor cannot receive damages at law for the injury sustained by the violation of its agreement. The only things certain about the agreement are the rent and the merchandise to be sold under the lease. If the lessor's only choice is to cancel, and thus lose the benefit of a valuable contract, then all the lessee would have to do, to relieve himself of the burden of his agreement, would be to exceed its authority or otherwise violate it, and so court expulsion from the market. To sustain his contention, the appellee cites *Hahn v. Concordia Society,* 42 Md. 460, 465, but, as we read the opinion in that case, it sustains the theory of the bill in this case, but the court there decided that the appellee's claim for injunction could not be sustained because the complainants there "exacted, and the defendant has given, a

stipulation to pay a specific sum as liquidated damages for any violation of the contract, including as well a breach of the negative, as the non-performance of the positive and affirmative parts of it."

There is no merit in the claim of the appellee that his signature to the letter of July 1st was obtained by duress. The proceeding is not based on his failure to do as he promised in that letter, but for his failure to keep within the bounds of his lease. The only effect of that letter is to show that the lessor had given the twenty-four hour notice to its lessee to desist from the alleged violation of his lease, and it is because of his persistence in his violation of the provision regarding the merchandise which it allowed him to sell that the bill was filed.

We therefore hold that the bill originally justified the granting of an injunction to restrain the appellee from selling uncooked smoked hams in the space leased to him, that the answer not only does not swear away the allegations of the bill, but, on the contrary, admits the facts alleged, and, the hearing having been on bill and answer, the injunction should have been continued, and the order dissolving it should be reversed. *Miller's Equity Proc.,* 707; *State v. Northern Central Ry. Co.,* 18 Md. 193, 219.

*Order reversed, with costs, and case remanded.*