787 A.2d 786

Harold H. BURNS, Jr., et al.,

v.

SCOTTISH DEVELOPMENT CO. INC., et al.

No. 0081, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Dec. 28, 2001.

Howard J. Schulman (Schulman & Kaufman, LLC on the brief), Baltimore, for Appellants.

Laura Maroldy (Gertrude Bartel and Kramon & Graham, P.A. on the brief), Baltimore, for appellees, Westwicke, et al.

Dwight W. Stone, II (Whiteford, Taylor & Preston on the brief), Baltimore, for appellee, Scottish Development Co., Inc.

Herbert R. O'Connor, O'Conor & Grant, Towson, for John L. Kenneally.

Ira L. Oring, Fedder & Garten, Baltimore, for Michael and Jennifer Myers.

Daniel H. Scherr, Reese and Carney, LLP, Columbia, for Kevin and Marla B. Carney.

John J. Connolly, Murphy & Shaffer, Baltimore, for Thomas and Jennie Faust and Myo and Khin May-Myint Thant.

Ralph L. Arnsdorf, Franklin & Prokopik, P.C., Baltimore, for Michael and Karen Riger.

Argued before KENNEY, RODOWSKY, LAWRENCE, F. (Ret'd, specially assigned), THIEME, RAYMOND G., Jr. (Ret'd, specially assigned), JJ.

KENNEY, J.

Harold H. Burns, Jr. and Scott Fine appeal the Circuit Court for Baltimore County's dismissal without prejudice of their Second Amended Complaint and its denial of their motion to alter or amend judgment. Appellants raise three issues on appeal, which we have rephrased and consolidated as two questions: [1]

I. Was the trial court's ruling on the issue of required joinder erroneous?

II. Did the trial court err in denying appellants' motion to alter or amend judgment?

For the reasons set forth below, we reverse and remand the case for further proceedings.

### FACTUAL BACKGROUND

This case concerns a 64.6954 acre parcel of land located in Lutherville on the southwest side of Falls Church Road in Baltimore County, immediately north of Maryvale Preparatory School and south of Satre's Lane Baptist Church and cemetery. The property is developed as a gated private community with private roads and is known as Westwicke. Appellants and their wives own lots in the adjacent Greenwood Subdivision that adjoin the Westwicke property.

When the developer of Westwicke, appellee, Scottish Development Co., Inc. ("Scottish"), submitted its plan for development of the parcel to Baltimore County for approval, appellants opposed it before both the Hearing/Zoning Officer and on appeal to the County Board of Appeals. The reasons for

---

1. Appellants posed the following questions:

I. Where a husband and wife are parties to a contract that concerns property held by them as tenants by the entireties and the husband sues on that contract, is the wife a necessary party to the litigation?

II. In the situation outlined in the first question, may the plaintiff husband satisfy the necessary joinder requirement by joining his wife as a defendant to the litigation?

III. Did the trial court err in denying appellants' motion to alter or amend judgment?

appellants' opposition was described in their Second Amended Complaint:

> [Appellants] opposed the development on the ground that the destruction of the forest and its buffer would destroy and interfere with the peace and enjoyment of their properties. [Appellants] also opposed the development on the ground that the development of Westwicke and the destruction of the forest buffer would cause sediment to flow into [nearby] Dipping Pond Run and settle in its bed, thereby causing the Run's trout population to decrease and the water that flows therein to rise and spread laterally against, around and over the banks of the Run. [Appellants] feared and alleged, at that time, that the development would cause the flow of the waters of the Run to change and the attendant and substantial erosion of the banks of the Run, including the banks on [appellants'] real property.

Appellants eventually came to an agreement with Scottish, which was memorialized in a Letter Agreement dated October 31, 1995.[2] According to the Second Amended Complaint, the Letter Agreement required Scottish to file a document entitled Declaration of Covenants, Conditions and Restrictions for Westwicke Homeowners' Association, Inc. (the "Covenants") in the Land Records. In addition, the Letter Agreement was contingent upon the Board of Appeals accepting it and the Covenants as an amendment to the development plan and incorporating them into its order. This apparently was done on November 15, 1995.

On June 21, 1999, appellants filed a complaint in the Circuit Court for Baltimore County claiming a number of violations of the Covenants and seeking injunctive relief. This complaint named multiple defendants, including Scottish, MacKenzie Commercial Real Estate Services, LLC ("MacKenzie"), West-

---

**2.** Appellants attached the Letter Agreement in an appendix to their brief. Appellees have moved to strike the Letter Agreement as well as an amendment to the Letter Agreement dated May 22, 1996. Appellees point out that these documents were not entered into the record and we should not take them into consideration. We agree.

wicke Homeowners' Association, Inc. ("WHA"), and a number of individuals who owned property in the Westwicke development.[3] On September 1, September 10, and October 4, 1999, different defendants[4] filed motions to dismiss the complaint, all citing failure to join an essential party. The alleged missing and essential parties were appellants' spouses, Margaret Burns and Susan Fine.

On November 1, 1999, appellants filed an Amended Complaint, which included additional factual allegations but no new counts. On November 15 and November 16, 1999, motions to dismiss the amended complaint were filed by Scottish, MacKenzie, Myo and Khin M. Thant, T. Kevin and Marla B. Carney, and Thomas J. and Jennie N. Faust. On November 18, 1999, the circuit court granted MacKenzie's motion to dismiss the complaint. It also granted other defendants'

---

3. T. Kevin Carney (listing an Ellicott City address), Santiago and Marta J. Padilla, Michael and Jennifer Myers, Francis M. and Donna V. Dix, John L. Kenneally and Barbara L. Shifflett, Sudhir and Aruna Trivedi, Robert Pollock, Alan P. and Louise P. Hoblitzell, F. Richard and M. Diana Pannoni, Fred Smith (listing the address of 1106 Westwicke Lane in Lutherville), T. Kevin and Marla B. Carney (listing a Lutherville address), Myo and Khin M. Thant, David R. and Jeanine K. Savello, Keith W. and Kimberly N. Lewis, John M. and Andrea T. Katz, Robert Bland and Teresa Kelley East, Armando J. Cignarale, Thomas J. and Jennie N. Faust, Michael J. and Karen R. Riger, Richard W. and Elaine E. Born, Jeffrey Blake and Diane Golub Powers, Francis X. and Gayle Kelly, William F. and Kathy F. Simmons, William J. and Kathleen F. Callis, Fred Smith (listing the address of 1203 Scotts Knoll Court in Lutherville), Mark A. Powers, and Albert F. and Claire A. Grimes.

4. The following defendants did not file a motion to dismiss: Barbara L. Shifflett, Robert Pollock, Alan P. and Louise P. Hoblitzell, Fred Smith, David R. and Jeanine K. Savello, Keith W. and Kimberly N. Lewis, Armando J. Cignarale, Jeffrey Blake and Diane Golub Powers, and Mark A. Powers. Barbara L. Shifflett, Robert Pollock, Alan P. and Louise P. Hoblitzell, who it does not appear were ever served have not participated in this suit. Fred Smith, who appears on the list of defendants twice, filed an answer but not a motion to dismiss, and he was later dismissed from the suit on March 2, 2000. David R. and Jeanine K. Savello, Keith W. and Kimberly N. Lewis, Armando J. Cignarale, Jeffrey Blake and Diane Golub Powers, and Mark A. Powers were all dismissed from the suit with prejudice prior to the end of October 1999.

various motions to dismiss for nonjoinder but granted appellants leave to amend their complaint.

Appellants filed a Second Amended Complaint on December 6, 1999. That complaint added Count II, which was titled "declaratory judgment" and which named appellants' wives as defendants to the suit. This was apparently done to force the wives into the lawsuit and to set the stage for having them subsequently declared as involuntary plaintiffs. The remaining defendants, with the exception of John M. and Andrea T. Katz and Michael J. and Karen R. Riger, filed motions to dismiss the Second Amended Complaint.[5] The court held a hearing on the motions on January 13, 2000. On January 21, 2000, the court dismissed the Second Amended Complaint without prejudice, finding:

> The Plaintiffs have brought this action against the named defendants as property owners. Each of the Plaintiffs hold their respective property as tenants by the entireties with their wives. However, their wives have not joined them as Plaintiffs in this action. It is a well established principle of law that tenants by the entireties *must* act together when the property they own together is at issue. Specifically, the Court of Appeals of Maryland, in the case of *Picking v. Yates*, 265 Md. 1, 288 A.2d 146 (1972), held that persons holding property *per tout et non per my* must act together with respect to that property. The Court stated,
>
>> No principle is better established in our law than that tenants by the entirety, because, unlike joint tenants, they hold *per tout et non per my*, must act together to sell their property, to subject it to any interest or encumbrance, or to lease it. Similarly, both spouses must join in an action for damages to property which they own by the entirety not only because of the way title is held, but because Maryland may require on motion by a defendant

---

**5.** There is no record that the Katzes filed any additional papers after their motion for summary judgment was denied by the court on November 18, 1999. The Rigers, however, alleged nonjoinder in their answer to the Second Amended Complaint.

that even tenants in common be joined as plaintiffs in an action *ex delicto* for damage to real property. (citations omitted.)

*Picking*, 265 Md. at 2, 288 A.2d 146.

The Plaintiffs seek to enforce their rights in this action as owners of property which they hold as tenants by the entireties with their wives. The Court of Appeals has clearly stated that tenants by the entireties must act together with respect to their property. Therefore, the Plaintiffs' wives must be joined as Plaintiffs to this action, not as Defendants. The failure to do so is fatal to the complaint.

Appellants filed a motion to alter or amend judgment on January 27, 2000, in which they attempted to join Margaret Burns as a party plaintiff.[6] The court denied the motion on February 23, 2000. This appeal followed.

## DISCUSSION

### Finality of Judgment

■ As a preliminary matter, we note that the judgment in this case does not appear on the face of the record to be final with respect to all of the parties. Although appellees do not raise the issue of jurisdiction, the Court of Appeals has stated in the past that it is elementary "that parties may not by consent confer jurisdiction upon this Court or the Court of Special Appeals." *Lewis v. Lewis*, 290 Md. 175, 179, 428 A.2d 454 (1981). Accordingly, we raise the issue of jurisdiction *nostra sponte*.

According to appellees, the appellees in this case are: Scottish, WHA, Santiago and Marta J. Padilla, Michael and Jennifer Myers, Francis M. and Donna V. Dix, John L. Kenneally, Sudhir and Aruna Trivedi, F. Richard and M. Diana Pannoni, T. Kevin and Marla B. Carney, Myo and Khin M. Thant, Thomas J. and Jennie N. Faust, Michael J. and Karen R. Riger, Richard W. and Elaine E. Born, Francis X. and Gayle

---

6. Susan Fine was still unwilling to participate in the suit.

Kelly, William F. and Kathy F. Simmons, William J. and Kathleen F. Callis, and Albert F. and Claire A. Grimes.

On January 21, 2000, the court granted the motions to dismiss amended complaint of: Scottish, WHA, Santiago and Marta J. Padilla, Michael and Jennifer Myers, Francis M. and Donna V. Dix, John L. Kenneally, Sudhir and Aruna Trivedi, F. Richard and M. Diana Pannoni, T. Kevin and Marla B. Carney, Myo and Khin M. Thant, Thomas J. and Jennie N. Faust, Richard W. and Elaine E. Born, Francis X. and Gayle Kelly, William F. and Kathy F. Simmons, William J. and Kathleen F. Callis, and Albert F. and Claire A. Grimes. Robert Bland and Teresa Kelley East are not listed as appellees, but their motion to dismiss the second amended complaint was granted.

Michael J. and Karen R. Riger are listed as appellees, but it appears that they did not file a motion to dismiss the second amended complaint. They did, however, raise the issue of joinder in their answer to the second amended complaint.

John M. and Andrea T. Katz appear to be active defendants. They had filed an answer to the complaint alleging nonjoinder of required parties as a defense. They had also filed a motion for summary judgment, which was denied by the court on November 18, 1999. They have filed no pleadings in response to the Amended Complaint or Second Amended Complaint, and we can find no record of either a motion dismissing them from the complaint or a default judgment against them.

In addition, we have not located any pleadings filed by Barbara L. Shifflett, Robert Pollock, and Alan P. and Louise P. Hoblitzell. In the complaint, Shifflett's address is the same as Kenneally's, but none of Kenneally's pleadings refer to Shifflett. There is no indication in the record that these parties had not been served, and there is no record of default judgments having been entered against them.

Rule 2–602 provides:

(a) *Generally.* Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action

(whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) *When allowed.* If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

■ The record in this case contains no Rule 2–602(b) certification from the circuit court. Nevertheless, the Court of Appeals has previously held that Rule 2–602 will not deprive an appellate court of jurisdiction where a final judgment has been rendered but claims remain against defendants who were not served. *State Highway Admin. v. Kee,* 309 Md. 523, 529, 525 A.2d 637 (1987) (citing *Hardy v. Metts,* 282 Md. 1, 381 A.2d 683 (1978); *Tidewater Ins. Assocs. v. Dryden Oil Co.,* 42 Md.App. 415, 401 A.2d 178 (1979)). In other words, the appellant will not be penalized for the circuit court's lack of jurisdiction over one or more defendants. *Id.* Because Shifflett, Pollock, and the Hoblitzells were listed on the complaint but they have not been heard from since, we believe it is reasonable to assume, without deciding, that they were not served.

With respect to the Rigers and the Katzes, we note that the Court of Appeals has held that "an order entered on the docket pursuant to Rule 2–601,[7] and having the effect of

---

7. Rule 2–601 reads:

terminating the case in the circuit court, is a final judgment." *Montgomery County v. Revere Nat'l Corp.*, 341 Md. 366, 378, 671 A.2d 1 (1996). Although *Revere* concerned the circuit court's decision on less than all of the claims in the case, we find the holding equally applicable in cases where there are multiple defendants and the court's decision has the effect of terminating the case. We explain.

■ A final ruling of a lower court must have three attributes: (1) the trial court must intend for the ruling to be the unqualified, final disposition of the matter; (2) the trial court must adjudicate all claims against all parties unless it acts properly according to Maryland Rule 2–602(b); and (3) the clerk must make a proper record in accordance with Maryland Rule 2–601. *Waller v. Maryland Nat. Bank*, 332 Md. 375, 378, 631 A.2d 447 (1993) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767 (1989)); *Jenkins v. Jenkins*, 112 Md.App. 390, 402, 685 A.2d 817, *cert. denied*, 344 Md. 718, 690 A.2d 524 (1997).

(a) *Prompt entry—Separate document.* Each judgment shall be set forth on a separate document. Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) *Method of entry—Date of judgment.* The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

(c) *Recording and indexing.* Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1–324.

■ In its ruling on the filed motions to dismiss, the circuit court specifically stated: "The Plaintiffs' Second Amended Complaint is hereby **DISMISSED WITHOUT PREJU-DICE.**" (Emphasis in original.) In the docket entry, the clerk noted the file as "closed" on January 21, 2000, and then again on February 23, 2000, when the court denied appellants' motion to alter or amend. We believe that, notwithstanding the Rigers' and the Katzes' failure to file motions to dismiss in this case, the court's ruling intended and effectively served to dismiss the second amended complaint as to all parties.[8] Accordingly, we proceed to the merits of appellants' case.

### Standard of Review

■ In the instant case, the court granted various appellees' motions to dismiss. We note, however, that there were facts before the court beyond those alleged in the pleadings. "Pursuant to Maryland Rule 2–322(c), when a trial judge is presented with factual allegations beyond those contained in the complaint to support or oppose a motion to dismiss and the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment." *Okwa v. Harper,* 360 Md. 161, 177, 757 A.2d 118 (2000).

A summary judgment motion is not a substitute for trial. Rather it is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law. . . . If any inferences may be drawn from the well-plead facts, the trial court must construe those inferences in the light most favorable to the

---

8. In any event, as noted above, the Rigers and the Katzes had raised nonjoinder in previous filings with the court. Of course, nonjoinder can be raised at any time, Rule 2–324(a), and failure to join required parties can result in dismissal of a case, Rule 2–211(c).

non-moving party. The existence of a dispute as to some non-material fact will not defeat an otherwise properly supported motion for summary judgment, but if there is evidence upon which the jury could reasonably find for the non-moving party or material facts in dispute, the grant of summary judgment is improper.

*Okwa,* at 178, 757 A.2d 118 (citations omitted).

Appellants argue that the court erred in its ruling requiring joinder of their wives, who did not wish to be involved in the lawsuit, pursuant to Md. Rule 2–211. Their argument is twofold. They first contend that this case involved a breach of contract, and, consequently, their wives are not required to be joined as parties to the litigation. They then argue that, even if joinder were required, their wives could have been joined as involuntary parties plaintiffs to the case pursuant to Rule 2–201 and 2–211(a) and that the court failed to follow these rules.

Appellees argue that it does not matter whether the rights were contractual in nature. As tenants by the entireties with their husbands, Mrs. Burns and Mrs. Fine would always be required parties as to any litigation concerning the Covenants. In response to appellants' second argument, they state that tenants by the entireties is a "legally-indivisible entity" and that, because appellants' wives did not voluntarily join the suit as plaintiffs, the suit must be dismissed.

Maryland Rule 2–211(a) states:

(a) *Persons to be joined.* Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff.

The purpose of this rule is to provide "for the compulsory joinder of necessary parties so that the case can proceed efficiently with respect to all persons having a cognizable interest in the matter and, at the end, the court can grant complete relief." *Caretti, Inc. v. Colonnade Ltd. Partnership*, 104 Md.App. 131, 142, 655 A.2d 64 (1995), *cert. denied*, 339 Md. 641, 664 A.2d 885 (1995). As the Court of Appeals has recognized "[t]he primary purposes of [Rule 2–211's] requirement that necessary parties be joined are 'to assure that a person's rights are not adjudicated unless that person has had his "day in court" ' and, to prevent 'multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding.' " *Mahan v. Mahan,* 320 Md. 262, 272, 577 A.2d 70 (1990).

### The Burnses and the Fines' Rights under the Covenants

Both Mrs. Burns and Mrs. Fine were signatories to the Covenants and described therein as "Adjoining Property Owners" along with their husbands. Although the Covenants do not specifically designate how the Burnses and the Fines own their lots, it is not disputed that they own their respective properties with their husbands as tenants by the entireties. The motion court appeared to find that because the Burnses and the Fines own their respective lots as tenants by the entireties, the action could not go forward. We disagree for the reasons stated below.

Restrictive covenants that run with the land have a dual nature. On one hand, they are property interests.

The view that covenants running with the land are indeed property interests is entirely consistent with Maryland decisions. Over one hundred twenty years ago our predecessors explained that a covenant running with the land is one

that "must extend to the land, so that the thing required to be done will affect the quality, value, or mode of enjoying the estate conveyed, and thus constitute a condition annexed, or appurtenant to it. . . ." *Glenn v. Canby,* 24 Md. 127, 130 (1866). And see *Pollack v. Bart,* 202 Md. 172, 176, 95 A.2d 864, 866 (1953) ("An equitable restriction on land has been held to be a property right in the person in favor of whose estate it runs or to which it is appurtenant").

We have no difficulty, therefore, in concluding that a covenant running with the land ordinarily is a compensable property interest in the condemnation context, at least to the extent it adds measurable value to the land to which it is attached.

*Mercantile–Safe Deposit & Trust Co. v. Baltimore,* 308 Md. 627, 641, 521 A.2d 734 (1987).

▆▆▆▆ On the other hand, "covenants affecting property are, even when running with the land, nonetheless contractual in nature." *Colandrea v. Wilde Lake Community Ass'n,* 361 Md. 371, 395, 761 A.2d 899 (2000). Covenants are also interpreted much like contracts:

In construing covenants, "[i]t is a cardinal principle . . . that the court should be governed by the intention of the parties as it appears or is implied from the instrument itself." *Live Stock Co. v. Rendering Co.,* 179 Md. 117, 122, 17 A.2d 130 (1941). The language of the instrument is properly "considered in connection with the object in view of the parties and the circumstances and conditions affecting the parties and the property. . . ." *Levy v. Dundalk Co.,* 177 Md. 636, 648, 11 A.2d 476 (1940). This principle is consistent with the general law of contracts. See *Anne Arundel County v. Crofton Corp.,* 286 Md. 666, 673, 410 A.2d 228 (1980) (court, in construing agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated). If the meaning of the instrument is not clear from its terms, "the circumstances surrounding the execution of the instrument should

be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be gathered from all possible sources." *Live Stock Co. v. Rendering Co., supra,* 179 Md. at 122, 17 A.2d 130.

If an ambiguity is present, and if that ambiguity is not clearly resolved by resort to extrinsic evidence, the general rule in favor of the unrestricted use of property will prevail and the ambiguity in a restriction will be resolved against the party seeking its enforcement.

*Belleview Construction Co., Inc. v. Rugby Hall Community Ass'n, Inc.,* 321 Md. 152, 157–58, 582 A.2d 493 (1990).

We turn to the language of the Covenants, focusing on those provisions applicable to appellants and their wives:

### RECITALS

\* \* \*

C. Harold H. Burns, Jr. and Margaret V. Burns, husband and wife (hereinafter, "Burns"), and Scott Fine and Susan C. Fine, husband and wife (hereinafter, "Fine"), are the owners of certain lots in the Greenwood Subdivision adjacent to the [Westwicke] Property. Burns and Fine are hereinafter referred to as the "Adjoining Property Owners." Declarant [Scottish] agrees that the Adjoining Property Owners shall have the right to enforce certain Special Restrictive Covenants herein as set forth in Section 10.1.4.1 hereof, which Special Restrictive Covenants shall not be modified without the approval of the Adjoining Property Owners, as set forth in Section 11.2.1.1 hereof. The Adjoining Property Owners join in this Agreement to acknowledge their responsibilities as set forth in this Declaration as set forth in Sections 3.2,[9] 10.1.4.1 and 11.2.1.1 hereof.

---

9. Section 3.2 provides:

[Scottish], its successors and assigns, reserves the right to waive such portion of the restrictions and covenants placed on the Property, pursuant to this Declaration, as [Scottish] deems necessary or in the best interest of the development as determined by [Scottish]. All

D. The application and enforcement of the provisions of this Declaration by [Scottish], its successors and assigns shall not diminish the protections afforded the Adjoining Property Owners herein nor their rights to enforce the Special Restrictive Covenants, nor the protection afforded the Forest Buffer Easement Area and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream, nor increase the number of Lots in the Subdivision.

E. [Scottish] intends by this Declaration to impose upon the Property mutually beneficial restrictions under a general plan of improvement for the benefit of all Owners (as defined below)[10] and the Adjoining Property Owners. [Scottish] intends through restrictions and special provisions set forth herein to protect the Forest Buffer Easement Area and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream.

Section 10.1.4.1 of the Covenants provides:

10.1.4.1. *Special Enforceability Provision.* This Declaration shall inure to the benefit of and be enforceable by the Adjoining Property Owners against [Scottish], its successors and assigns, as to the following specific Sections only: Recital D and Sections 6.1.1, 7.2.1, 7.2.2, 7.2.3, 7.3.2, 7.8.1., 7.8.2, 9.3 and 11.2.1.1 (the Special Restrictive Covenants").

---

waivers shall be in writing and a copy thereof shall be filed with [Scottish] and a copy thereof shall be available to all Owners upon request. Notwithstanding the aforegoing Section 3.2, it is agreed and understood that the Special Restrictive Covenants may not be waived by [Scottish], without the prior approval of the Adjoining Property Owners, whose approval shall not be unreasonably withheld, delayed or conditioned.

**10.** The Covenants define "owner" as

any Person or combination of Persons (including, by way of example rather than of limitation, [Scottish] and any Builder) who holds record fee simple title or perpetually renewable leasehold title to a Lot under a deed or other instrument, provided that (a) no Lessee or Contract Purchaser shall, merely by virtue of its status as such, be deemed as Owner; and (b) no Mortgagee shall be deemed Owner of a Lot unless and until it acquires of record the Mortgagor's equity of redemption thereof.

This special provision as to enforceability shall remain the right of each of these individuals to enforce so long as that individual continues to own his existing lot in the adjacent subdivision. The failure of the Adjoining Property Owners to enforce any provision of this Declaration shall in no event be deemed a waiver of his continued right to enforce the Declaration thereafter. The Adjoining Property Owners each agree by execution of this document to exercise reasonable judgment in enforcing the provisions for which this Special Enforceability Provision is granted. [Emphasis supplied.]

The Special Restrictive Covenants referenced in Section 10.1.4.1 are set forth below:

6.1.1 *Lawn Maintenance.* Subject to the restrictions and provisions in the Forest Buffer Easement Agreement, the Declaration of Covenants and Restrictions for Buffer Zone and Sections 7.2.2 and ·7.2.3 hereof, each Lot shall be kept free from rubbish and trash of any kind, clean and with lawns neatly mowed a minimum of six (6) times per growing season, so that grass and weeds do not exceed five (5″) inches in height. In the event the Owner of any Lot does not properly maintain his or her Lot, [Scottish], or the Association or its employees, shall have the right to enter upon said Lot to cut and remove the grass, weeds, rubbish or trash and the Owner of any Lots so benefited [sic] shall pay reasonable charges for such services as determined by [Scottish] or the Association to its designee.

\* \* \*

7.2 *Rules, Regulations and Statements of Policy*

7.2.1 *Adoption.* The Architectural Committee may adopt (i) rules and regulations (the "Rules and Regulations") governing the form and content of any Plans to be submitted to the Architectural Committee for its consideration and (ii) statements of policy with respect to its approval or disapproval of the architectural styles or details, or other matters, reflected in such Plans. The Architectur-

al Committee shall consider application for approval of plans, specifications, etc., on the basis of conformity with this Declaration and any Rules and Regulations adopted by the Architectural Committee and shall be guided by the extent to which such proposal will insure conformity with the provisions of this Declaration, based upon, among other things, the following factors: the quality of workmanship; nature and durability of materials; harmony of external design with existing structures; choice of colors; change in topography, grade elevations and/or drainage; adequacy of sediment controls with specific emphasis on the protection of the Forest Buffer Easement Area and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream, the effect of the proposed improvements or alterations on the use, enjoyment and value of other neighboring properties, views from adjacent or neighboring properties; and general suitability relative to the surrounding area.

7.2.2 *Limitation on Clearing of Lots.* No more than an aggregate total of 10,000 square feet on each Lot may be cleared without the express written authorization of the Architectural Committee. In the event that the Architectural Committee permits more than 10,000 square feet of clearing on a Lot, then the Architectural Committee shall require the Lot Owner to plant two (2) two-inch (2″) caliper trees of native species for every 500 square feet (or fraction thereof) of additional clearing allowed in excess of 10,000 square feet. Under no circumstance shall more than 15,000 square feet of clearing be permitted on any Lot. These restrictions shall not affect those Lots which are already cleared. After final grading following construction of a Dwelling on a Lot, no living tree greater than 8″ " in diameter may be removed from a Lot without approval of the Architectural Committee. The Architectural Committee may not authorize a variance to this Section, except as otherwise provided in this Section 7.2.2.

7.2.3 *Extension of Forest Buffer Easement Area.* The restrictions contained in the Forest Buffer Easement

Agreement shall apply to an area extending five feet (5′) beyond the boundaries of the Forest Buffer Easement Area as shown on the Plat and there shall be no building and no construction within this five foot (5′) extension area, provided, however, that building and construction shall be allowed in this five foot (5′) extension area for septic fields, wells or storm water management purposes. Upon a Lot Owner's specific request to the Architectural Committee, permission will not be unreasonably withheld, delayed or conditioned for a Lot Owner to allow the Forest Buffer Easement Area to expand onto a requesting Lot Owners' Lot beyond the limits of the Forest Buffer Easement Area and the five foot (5′) extension area. The Architectural Committee may not authorize a variance to this Section, except as otherwise provided in this Section 7.2.3.

\* \* \*

7.3.2 *Specific Construction Criteria.* The Architectural Committee shall not approve any Plan if any of the following special construction criteria are violated:

(a) A Dwelling to be constructed on a Lot shall not exceed 7,500 square feet of living space. Square feet of living space shall mean the area between the finished surfaces of the exterior walls of the Dwelling, but does not include exterior porches or deck, garages, basements or attic areas. Additionally, square footage of living space shall not include the open areas of a two-story volume area which are included in the computation of the floor area of the first floor.

(b) There shall be no additional Street Lights beyond those Street Lights shown on the Development Plan.

(c) No exterior lights shall be installed on any structure higher than thirty feet (30′) from the ground.

(d) No exterior lighting shall be installed which is greater than 250 watts, and all exterior lighting, except motion sensitive flood lighting, shall be minimized and shall be directed inward and downward toward the Dwelling.

(e) No Dwelling is to be higher than thirty-five feet (35′) as measured by the 1995 Baltimore County Zoning Regulations.

(f) The sediment control plans and other Plans must adequately protect the Forest Buffer Easement Area and the Forest Buffer Easement Area as extended by Section 7.2.3, and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream.

(g) The Architectural Committee may not authorize a variance to the Section.

\* \* \*

7.8.1 *Specific Construction Requirements.* [Scottish] has entered into an Agreement, subject to Baltimore County approval, to install and maintain Supersilt Fence sufficient to protect the Forest Buffer Easement Area and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream, but not less than that Supersilt Fence shown on the Plat. By the acceptance of a Deed conveying any of these Lots, the Owner thereof covenants to adhere to the following:

(1) The Supersilt Fence installed along the Forest Buffer Easement Area shall be provided by [Scottish] for the purpose of protecting the Forest Buffer Easement Area and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream.

(2) The Lot Owners, prior to construction of any Structure on any Lot and prior to dearing of trees on any Lot, shall provide and maintain adequate sediment control and additional Supersilt Fence sufficient to protect the Forest Buffer Easement Area, any extension of the Forest Buffer Easement Area under Section 7.2.3, and its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream and in accordance with the requirements of the Architectural Committee. Each Owner of a Lot shall maintain the Supersilt Fence on that Lot until such time as the

Dwelling thereon is completed and the Lot is vegetatively stabilized.

(3) Stock piles of soil shall be located uphill and away from the Forest Buffer Easement Area, and shall be protected with Silt Fence.

(4) The Architectural Committee may not authorize a variance to this Section.

7.8.2 *Specific Environmental Requirements.* All Lot Owners and [WHA] agree to adhere to the following:

(1) All areas except those used for buildings, structures, sidewalks and paving, shall be planted with vegetative cover and/or landscaped as soon as reasonably possible after final grading following construction of a Dwelling on a Lot, and shall be maintained in such condition.

(2) Dirt and debris accumulating on private roads shall be removed according to the following schedule: May through October, concurrent with grass mowing; November through April, as required.

(3) Snow removal shall be by mechanical means except in severe snow and ice conditions, when de-icing compounds may be used.

(4) Application of fertilizers, herbicides and pesticides shall not exceed recommendations of the University of Maryland Cooperative Extension Service.

(5) Filling shall not occur in grass or lined drainage ditches or swales.

\* \* \*

9.3 *Forest Buffer Easement Area.* A Forest Buffer Easement Area, as shown on the Plat and as extended under Section 7.2.3., has been established pursuant to the Baltimore County Development Regulations for the purpose of protecting its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream. The intention of this buffer, including restrictions and limitations on uses permitted within it, are further outlined in the Forest Buffer Easement Agreement. Reasonable use of each Lot

requires not violating the restrictions set forth herein and in the Forest Buffer Easement Agreement, the purpose of which is to protect the Forest Buffer Easement Area, its associated wetlands and streams, notably Dipping Pond Run, a Class III trout stream.

\* \* \*

11.2.1.1 *Special Amendment Provision.* The Special Restrictive Covenants, as described in Section 101.4.1., Section 10.5.[11] and this Section 11.2.1.1. may only be amended upon the express written approval of the Adjoining Property Owners, which approval shall not be unreasonably withheld, conditioned or delayed. **This special provision as to amendment approval shall remain the right of each of these individuals so long as that individual continues to own his existing lot in the adjacent subdivisions.** [Emphasis supplied.]

It is clear from the foregoing that appellants' rights under the Covenants are personal to them, do not inure to the benefit of their successors and assigns, and, thus, do not "run" with their property. Rather, this document seems to have been carefully drawn to avoid creating a covenant that would run with the Burns' and the Fines' land. It also does not appear, from either the Covenants or elsewhere in the record, that appellants had to give up any property rights of their own in order to receive the benefit of the Covenants. Restrictive covenants of the type present in this case will only run with the land, when they " 'extend to a thing in *esse,* parcel of the demise, the thing to be done by force of the covenant is in a manner annexed and appurtenant to the thing demised, and shall run with the land, and shall bind the assignee, although he be not bound by *express words.'* " *Mercantile–Safe Deposit & Trust Co.,* 308 Md. at 634–35, 521

---

11. Section 10.5 provides: *"Attorney's Fees.* Any party to a proceeding who succeeds in enforcing a provision or enjoining the violation of a provision against any Owner of any Lot may be awarded a reasonable attorney's fee against such Owner."

A.2d 734 (quoting *Lynn v. Mount Savage Iron Co.*, 34 Md. 603, 634–35 (1871)) (emphasis in *Lynn* ).

The Covenants burden only Westwicke and the benefit obtained is not extended, annexed, or appurtenant to appel-lants' land. Rather, enforceability is limited to the appellants and their named spouses. When ownership of the Greenwood Subdivision lots changes, any obligation imposed by the Covenants cannot be enforced by the new owners of the Greenwood lots. Rather than extending to the land and thus to subsequent owners of appellants' lots, the Covenants extend only to the current individual owners.

Appellants' and their wives' rights under the Covenants came about as part of a settlement agreement arising out of earlier administrative proceedings. By contract, appellants and their wives could enforce provisions concerning lawn maintenance and certain environmental requirements based on breach of the Covenants ¶¶ 6 .1.1. and 7.8.2. Appellees, however, do not have reciprocal rights against appellants. Appellees could not sue appellants or their wives under the Covenants if they allowed their property to become overgrown, failed to landscape their property, routinely used de-icing compounds to remove snow, or applied pesticides or fertilizers in large quantities. The only duty imposed on appellants by the covenants is to "exercise reasonable judgment" in enforcing the covenants and in approving waivers of the Special Restrictive Covenants. To the extent that their "peace and enjoyment" of the Greenwood lots may be enhanced, that benefit is expressly limited to the period of time during which the appellants or their wives own their respective properties. It does not run with the land.

Appellees nevertheless argue that the following language from the Covenants, Recital C, requires the Burnses and the Fines to act in concert with respect to enforcing the Covenants:

Harold H. Burns, Jr. and Margaret V. Burns, husband and wife (hereinafter, "Burns"), and Scott Fine and Susan C. Fine, husband and wife (hereinafter, "Fine"), are the owners

of certain lots in the Greenwood Subdivision adjacent to the [Westwicke] Property. Burns and Fine are hereinafter referred to as the "Adjoining Property Owners."

Although the foregoing language suggests that the Burnses and the Fines own their property as tenants by the entireties, it does not expressly require that the husbands and wives act in concert with respect to the Special Restrictive Covenants. Moreover, paragraph 10 .1.4.1 states that "[t]his special provision as to enforceability shall remain the right of **each** of these **individuals** to enforce so long as **that individual** continues to own **his existing lot** in the adjacent subdivision." (Emphasis supplied.) The language of 10.1.4.1 makes it clear that the right to enforce the Covenants is personal to each of the Burnses and the Fines. If either couple were to take steps to change their ownership of the property, for example, to ownership as tenants in common after a divorce, or for estate planning purposes, they would still be able to sue.

Tenants by the entireties are required to act as one where property rights are at issue. *See Picking,* 265 Md. at 1, 288 A.2d 146; *Arbesman v. Winer,* 298 Md. 282, 284, 468 A.2d 633 (1983) (where only the husband gave notice of termination of lease to tenant at will, his subsequent action for repossession of the premises held by him as a tenant by the entirety with his wife cannot be maintained); *State v. One 1984 Toyota Truck,* 69 Md.App. 235, 242–43, 517 A.2d 103 (1986), *aff'd,* 311 Md. 171, 533 A.2d 659 (1987) (tenant by the entirety may not sell or encumber the property without the consent of the other). The rights appellants and their wives have under the Covenants do not involve an encumbrance on, interest in, or damage to their property as described by the Court of Appeals in *Picking,* 265 Md. at 2, 288 A.2d 146. As we have discussed above, their property rights are not at issue.

Appellees argue that, because there are restrictive covenants at issue in this case, we must look to appellant's ownership of their land and require them to act in concert. We disagree. Under the circumstances of this case, the right of each of the parties to sue did not arise from their ownership of these lots as tenants by the entireties, but from a contract

right. The status of the spouses as a tenant by the entirety with their respective husbands does not require that they voluntarily act in concert. For the purposes of this action, they are not a "legally indivisible entity." Therefore, there is no reason to treat them other than as co-obligees under the contract with appellees.

### Were Mrs. Burns and Mrs. Fine Required Parties?

Having found that appellants' rights under the Covenants are contractual in nature, we turn to whether the joinder of Mrs. Burns and Mrs. Fine, as co-obligees on the contract, is required. The rule provides that a person subject to service of process

> shall be joined as a party in the action if in that person's absence (1) complete relief cannot be accorded among those already parties, **or** (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

Rule 2–211(a) (emphasis supplied).

The rule directs our attention to two circumstances requiring mandatory joinder. The first, the ability to render complete relief, directs our focus to the relief requested. Here, appellants seek injunctive relief for specific covenant violations against the appellees and a declaratory judgment. It is not difficult to see that the relief requested could be accorded even without the appellants' spouses. Based on the pro se answers of the wives, as discussed in more detail below, their interests would appear to be the same as their husbands and there is no request for money damages.

■■■ Nevertheless, appellants and several appellees have requested an award of reasonable attorney's fees in this case. Without comment on the appropriateness of the fee requests, these requests raise the specter of monetary damages. By virtue of their ownership of the property as tenants by the entirety, their real property would be shielded from attach-

ment for their husbands' individual debt should fees be awarded to apellees. *See, e.g., Diamond v. Diamond,* 298 Md. 24, 467 A.2d 510 (1983); *Jones v. Jones,* 259 Md. 336, 270 A.2d 126 (1970).

The second circumstance, the inability to protect a claimed interest related to the subject of the action or a **substantial** risk to the appellees of multiple or inconsistent obligation by reason of the spouses' interests also appears remote. Here, the issue is what the covenants require and the requested relief is mandatory compliance. The risk to appellees of not joining the spouses is hardly substantial in light of the pro se answers filed by Mrs. Burns and Mrs. Fine.

Turning from the plain language of Rule 2–211 to determine whether joinder is required in this case, we look now at the case law. The Court of Appeals has held that where a contract is joint, all of the contracting parties must be party to a law suit arising thereunder. *Hughes v. Thurman,* 213 Md. 169, 175, 131 A.2d 479 (1957) (in the case of a joint contract obligation, "all of the joint obligees (if living) would have to be parties to a suit to enforce it."); *Furness v. Read,* 63 Md. 1, 3 (1884) ("where the contract is joint, either by agreement or by implication, as where the part-owners are general partners or *quasi* partners in the particular adventure, they must sue together.")

In the only case we have found involving spouses and a suit to enforce restrictive covenants, the facts are distinguishable from the case at bar. *Swineford v. Nichols,* 16 O.O.2d 432, 177 N.E.2d 304, 1961 Ohio Misc. LEXIS 310 (Ohio C.P.1961). In *Swineford,* the court found that spouses who are tenants in common must both be joined in the suit because they are "united in interest." *Id.* at 307. Citing *McCord v. McCord,* 104 Ohio St. 274, 135 N.E. 548 (1922), the *Swineford* court said:

> That parties are united in interest when they are similarly interested in and will be similarly affected by the determination of the issues involved in the action. Where a husband and wife are joint owners of a lot of land as tenants in common, both are similarly interested in and will be similar-

ly affected in the outcome of an injunction sent to enforce restrictions as it affects their lot of land, and are therefore "united in interest."

*Swineford,* at 307.

Unlike this case, all of the parties in *Swineford* lived in the same development and were subject to the same covenants. In this case, appellants were not lot owners in the Westwicke development and their lots are not bound by the Covenants although they have rights under them as a matter of contract. They would, of course, be similarly affected by the outcome of the case.

We find guidance also in a variety of federal cases interpreting Federal Rule of Civil Procedure 19. The Court of Appeals has stated that "Rule 2–211 essentially tracks Fed.R.Civ.P. 19. Therefore, interpretations of that federal rule are persuasive as to the meaning and proper applications of the Maryland rule." *Garay v. Overholtzer,* 332 Md. 339, 355, 631 A.2d 429 (1993) (citations omitted). Courts interpreting Rule 19 of the Federal Rules of Civil Procedure have held that "[g]enerally, in breach of contract actions, all parties to the contract are necessary ones." [12] *Rojas v. Loewen Group Int'l,* 178 F.R.D. 356, 361 (D.P.R.1998) (citing *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78–79 (1st Cir.1982); *E & E Inv., Inc. v. Simmons Co.,* 169 F.R.D. 467, 471–72 (D.P.R.

---

12. Fed. R. Civ. Pr. 19 provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and

1996); *F & M Distributors v. Am. Hardware Supply,* 129 F.R.D. 494, 497–98 (W.D.Pa.1990)). *See also* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1613, which states that "[j]oint [contract] obligees . . . usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action. Courts taking this position generally have reasoned that the duty or promise was made to the obligees jointly, not separately, and that mandatory joinder is jusitifed." (Footnotes omitted.)

 Under these circumstances, joinder in litigation is "generally" necessary for the court to grant complete relief without risking further litigation. Nevertheless,

> [w]here it has been determined that an understanding exists between the absent party and a plaintiff that responsibility for litigating a particular matter rests with the plaintiff alone, courts have consistently concluded that the absent parties' interests are being effectively protected and have therefore held that the absent parties are not necessary parties. *See Coastal v. Laminators, Inc.,* 635 F.2d 1102, [1108] n. 3 (4th Cir.1980); *see also Washington v. Daley,* 173 F.3d 1158, 1167 (9th Cir.1999).

*Dixon v. Edwards,* 172 F.Supp.2d 702 (D.Md. 2001).

Of the cases cited in *Dixon v. Edwards, supra,* only *Coastal* involves a contract. In that case, Coastal had contracted with

---

joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

the Navy to build air traffic control towers. Coastal, in turn, subcontracted with Laminators, Inc., to manufacture panels to be placed on the control towers. In July 1978, the Navy notified Coastal that panels in air traffic control towers that it had constructed needed to be replaced. Coastal looked to Laminators for replacements, but it refused. Coastal eventually sued Laminators, which then filed a third-party suit against Albi Manufacturing Corporation and Harad Paint Company, Inc., the paint manufacturer and distributor, respectively. Laminators attempted to require that the Navy be joined pursuant to Rule 19(a). The Court explained:

> The portion of Rule 19(a) upon which Laminators relies provides:
>
>> A person ... shall be joined as a party in the action if ... (2) he claims an interest ... and is so situated that the disposition of the action in his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
>
> Fed.R.Civ.P. 19(a). Laminators contends that it may be subject to a substantial risk of incurring multiple obligations because the Navy is not a party to the action. The trial court justifiably found, however, that Laminators could only theorize the possibility that the Navy would institute suit against it. Nothing before the court suggested a substantial likelihood of such a suit.[3] The inquiry contemplated by Rule 19 is a practical one. 7 C. Wright & A Miller, Federal Practice and Procedure § 1604 (1972). It is addressed to the sound discretion of the trial court. *General Tire & Rubber Co. v. Watkins,* 326 F.2d 926 (4th Cir.), *cert. denied,* 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498 (1964). We find no abuse of discretion under the circumstances.

---

[3.] Evidence showed that it was clearly understood between the Navy and Coastal that the responsibility of litigating the matter would rest

with Coastal alone. The trial court concluded that the Navy's interests were being effectively protected by Coastal.

*Coastal,* 635 F.2d at 1107–08.

In this case, both Mrs. Burns and Mrs. Fine have filed identically worded *pro se* answers to the second amended complaint:

1. I admit that everything stated in Count I of the Second Amended Complaint is true. Dipping Pond Run and my land are being damaged because the developer of Westwicke did not comply with the Letter Agreement of October 31, 1995, and the defendants who own land there now will not comply with the Westwicke Covenants.

2. I admit that everything stated in Count II of the Second Amended Complaint is true.

3. I would like the Court to order the developer and the defendants who own land in Westwicke to comply with the Covenants and fix the problems with the storm water management facilities and repair the damage caused to the land and streams.

4. I do not, however, wish to be further involved in this action.

Insofar as the substance of this lawsuit is concerned, the record reflects that Mrs. Burns and Mrs. Fine are in full agreement with their husbands. Moreover, it would appear that Mrs. Burns and Mrs. Fine have turned the enforcement of the Covenants over to their husbands, who are representing their interests.

Nevertheless, the motion court apparently reached its decision based solely on the relationship of appellants' wives as tenants by the entireties in their respective properties and thus need to "act together." For this reason, the record may not be fully developed on whether the spouses were necessary parties to the litigation for reasons other than their status as tenants by the entireties. Thus, we will remand the case for further proceedings.

## Parties Joined Involuntarily

It appears that Mrs. Burns is prepared to join the action as a plaintiff. If so, she should be permitted to do so absent some other legal problems. In the event the appellants continue to contest the joinder of their wives and the court determines that joinder is necessary and that an appellant's wife will not join voluntarily, the rules provides the remedy. Rule 2–111(a) states that "[t]he court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff." The plain language of this rule indicates that the court may order a person or persons to be joined in the suit and it allows for joinder of involuntary parties as defendants.

Mrs. Burns and Mrs. Fine were joined as defendants in this case in the second amended complaint, in which appellants added a declaratory judgment claim to their second amended complaint naming only their spouses as defendants. Subsequently, both in their motion in opposition to the motions to dismiss and at the subsequent hearing, appellants specifically requested that the court realign the parties pursuant to Rule 2–213:

> Misjoinder of parties is not ground for dismissal of an action. So long as one of the original plaintiffs and one of the original defendants remain as parties to the action, parties may be dropped or added (a) by amendment to a pleading pursuant to Rule 2–341 or (b) by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Rule 2–213 is derived from Fed. R. Civ. Pr. 21,[13] which allows for the court to "*sua sponte* realign *any* party at *any* time."

---

13. Fed. R. Civ. Pr. reads: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of

*In–Tech Marketing Incorporated v. Hasbro, Inc.,* 685 F.Supp. 436, 442 n. 19 (D.N.J.1988) (emphasis in original).

The U.S. District Court for the District of Oregon explained further in a case alleging a breach of consignment agreement by Standard Oil. *Perkins v. Standard Oil Company of Calif.,* 29 F.R.D. 16 (D.Or.1961), *aff'd,* 347 F.2d 379 (9th Cir.1965). Standard Oil had entered into a consignment agreement with plaintiff Clyde A. Perkins, Lee Powell, Dorothy M. Harris, and Harris Distributing. Subsequently, Standard Oil allegedly refused to furnish Perkins with petroleum products for distribution, and Perkins filed suit, initially in state court in Washington, because he is a citizen of Washington. Perkins' co-consignees, all of whom were citizens of Oregon, were still working with Standard Oil and did not wish to be involved in the suit. In the interim, Standard Oil, a Delaware corporation, had removed the case to the U.S. District Court for the Western District of Washington and then had it transferred to the U.S. District Court for the District of Oregon. Realizing that the co-consignees were indispensable parties to the litigation, Standard moved to dismiss the case. Perkins subsequently amended his complaint naming his co-consignees as defendants. Standard Oil then moved for an order dismissing the suit for lack of diversity jurisdiction. *Id.* at 17–18.

The court, agreeing that all the co-consignees were necessary parties to the litigation, recognized that, by leaving the co-consignees as defendants in the suit, diversity jurisdiction would be destroyed, sending Perkins back to the same court in which he started, while Standard Oil apparently wished to have the case litigated in federal court. The court then asked whether the co-consignees, as "named and apparent defendant[s], [could] be realigned with the plaintiff to preserve the Court's original diversity jurisdiction?" It decided that they could, stating:

the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

'The designation of parties as plaintiff or defendant in formal pleadings is not determinative of their position for purposes of jurisdiction. If the parties are not properly aligned, as where a party is made a defendant when in truth and fact he is not adverse to the plaintiff, or vice versa, the court will realign the parties according to their interests before determining diversity. Thus, where suit was brought in (a Washington) court by (Perkins), a citizen of (Washington), against (Powell), a citizen of (Washington), and (Standard), a citizen of (Delaware), removal was allowed because the controversy really existed between (Perkins) and (Powell) on the one side and (Standard) on the other; * * *.' [Note: Parenthetical material is a paraphrase.] MOORE'S FEDERAL PRACTICE, Vol. 3, § 19.03, Realignment of Parties, pp. 2105–2106.

\* \* \*

Moore tells us that "in proper cases,' Rule 19(a) states that such a recalcitrant party may be made 'an involuntary plaintiff." The meaning and application of this phrase is illustrated by the decision in *Independent Wireless Co. v. Radio Corp.*, 1926, 269 U.S. 459, 46 S.Ct. 166, 171, 70 L.Ed. 357. In this case, the owner of a patent refused to join with his exclusive licensee in an infringement case, and the court said:

'We * * * hold that, if there is no other way of securing justice to the exclusive licensee, the latter may make the owner without the jurisdiction a coplaintiff without his consent in the bill against the infringement. * * *'

Moore further advises us that the courts have limited the use of this doctrine to cases involving suits by licensees of patents or beneficial owners of copyrights; however, it would appear that these cases were dealing with indispensable parties rather than proper or necessary parties. Moore says: 'An extension of the doctrine of the cases which have sanctioned involuntary joinder is warranted.' Surely so in cases such as here to prevent a legal impasse when occasioned by procedures followed here. *See McAu-*

*lay v. Moody, C.C.D.O.* 1911, 185 F. 144 (see n. 10, Moore, supra, p. 2150), where a coobligee was left without a remedy, which could have been obviated by making the coobligee an involuntary plaintiff. This Court is firmly of the opinion that Perkins, under the allegations of his amended complaint, could have properly applied for the joining of Powell, Harris and Distributing as 'involuntary plaintiffs' herein. *Perkins,* 29 F.R.D. at 18–19 (footnote omitted).

■ We find this reasoning to be persuasive. If Mrs. Burns and Mrs. Fine are required to be parties to this case, we believe that they would be more properly viewed as plaintiffs rather than as defendants.

**JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE COUNTY FOR PROCEEDINGS NOT . INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**